**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BUDGET RENT A CAR SYSTEM, INC.,<br><br>Plaintiff,<br><br>v. | Civ. Action No. 08-2706 (KSH) |
| MISSOULA ACCEPTANCE COMPANY, d/b/a BUDGET RENT A CAR OF MISSOULA and BUDGET RENT A CAR OF BILLINGS; MARY I. RYGG, INC., d/b/a BUDGET RENT A CAR OF WHITEFISH/KALISPELL; SOUTHERN CROSS RENTAL, INC., d/b/a BUDGET RENT A CAR OF McALLEN; LESLIE & LOIS CURRY, a SOLE PROPRIETORSHIP, d/b/a BUDGET RENT A CAR OF AMARILLO AND BUDGET RENT A CAR OF LUBBOCK; and CURREY ENTERPRISES, INC., d/b/a BUDGET RENT A CAR OF ABILENE,<br><br>Defendants. | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

Here the Court considers the objections of plaintiff Budget Rent A Car System, Inc. ("BRACS") to the December 12, 2008 Report and Recommendation of Magistrate Judge Patty Shwartz (D.E. 42) ("the Report and Recommendation") that this action be dismissed for lack of personal jurisdiction and lack of venue and that the motion to transfer be denied. For the reasons stated herein, the Court affirms the Report and Recommendation and adopts its reasoning as the Opinion of the Court.

**I.     Background**

BRACS is the owner of a system for the rental of passenger vehicles under the Budget trademark. In the United States, BRACS operates vehicle rental locations and licenses third parties to operate rental locations under the Budget trademark and pursuant to the Budget

1

system.  Since 2002, BRACS corporate headquarters and principal place of business has been located at Parsippany, New Jersey.  In this action, BRACS seeks a declaratory judgment against several of its subfranchisees.  Defendants Missoula Acceptance Company ("Missoula"), doing business as Budget Rent A Car of Billings, and Budget Rent A Car of Missoula and Mary I. Rygg, Inc. ("Rygg"), doing business as Budget Rent A Car of Whitefish/Kalispell, are both corporations organized under the laws of Montana.  Defendant Southern Cross Rental, Inc. ("Southern Cross"), which does business as Budget Rent A Car of McAllen is a corporation organized under the laws of Texas.  Defendant Currey Enterprises, Inc. ("Currey Enterprises"), doing business as Budget Rent A Car of Abilene, is a corporation organized under the laws of Texas.  Leslie and Lois Currey (the "Curreys"), operating a sole proprietorship, do business as Budget Rent A Car of Lubbock and Budget Rent A Car of Amarillo.  In the 1960s, BRACS' predecessor-in-interest had entered into Master License Agreements with Los Compadres, a Montana subfranchisor, and Budget Rent A Car of the Southwest ("BRAC-SW"), a Texas subfranchisor.  As set forth in the Report and Recommendation, the two subfranchisors subsequently entered into sublicense agreements with the various defendant subfranchisees in their respective states.

In November 2004, BRACS terminated the Master License Agreement with Los Compadres, and at approximately the same time notified Los Compadres' subfranchisees (Missoula and Rygg) of this termination.  (Am. Compl. ¶¶ 32-33.)  As alleged in the complaint, at that juncture BRACS "sought to determine whether it could reach a mutually acceptable agreement with Missoula . . . and Rygg pursuant to which" those companies "would become direct franchisees" of BRACS.  (Am. Compl. ¶ 34.)  For the interim, BRACS agreed that the subfranchisees "could continue to use the BRACS tradename, trademarks and system" as long as

equivalent royalties were paid to BRACS as had been under their sublicense agreements.  (Am. Compl. ¶ 34.)

On January 6, 2006, BRACS terminated the Master License Agreement with BRAC-SW, notifying the Texas subfranchisees, Southern Cross, Currey, and Currey Enterprises on January 11, 2006.  (Am. Compl. ¶¶ 35-36.)  As alleged by BRACS, after terminating the Master License Agreement with BRAC-SW, BRACS "sought to determine whether it could reach a mutually acceptable agreement with Southern Cross, Currey, and Currey Enterprises" through which they "would become direct franchisees of [BRACS]."  (Am. Compl. ¶ 37.)  Meanwhile, as was done with the former Los Compadres subfranchisees, the former BRAC-SW subfranchisees were able to continue to use BRACS system and trademarks so long as they paid the same royalties as under the sublicense agreement with BRAC-SW.  (Am. Compl. ¶ 37.)

On June 2, 2008, BRACS filed an action for declaratory judgment against all defendants seeking a declaration that it had a right to terminate the sublicensing agreements, and that they had been effectively cancelled.  (Compl., D.E. 1.)  On August 4, 2008, BRACS amended its complaint to add an additional count for breach of contract against defendant Missoula for failure to pay fees under the agreement after the termination of the master licensing agreement with Los Compadres.   Defendants thereafter moved to dismiss for lack of personal jurisdiction or improper venue, or in the alternative, moved to transfer venue.  (D.E. 29.)  Magistrate Judge Shwartz issued her Report and Recommendation on December 12, 2008 in the form of a lengthy oral opinion accompanied by an order.  (D.E. 42.)  BRACS was granted leave to object to the Report and Recommendation out-of-time, and filed its objections on January 9, 2009.  (D.E. 44, 45.)

Pursuant to L. Civ. R. 72.1(c)(2), the Court "shall make a *de novo* determination of those portions [of the Report and Recommendation] to which objection is made and may accept, reject, or

3

modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." L. Civ. R. 72.1(c)(2). The local rule further provides that the Court "need not normally conduct a new hearing and may consider the record developed before the Magistrate Judge, making his or her own determination on the basis of that record." *Id.*

## II.   <u>The December 12, 2008 Report and Recommendation</u>

Magistrate Judge Shwartz's Report and Recommendation is comprised of her one-page order as well as the 38-page transcript of her oral report and recommendation. (D.E. 42; 12/12/2009 Oral Report & Recommendation Trans. ("R&R Trans.").) BRACS, which is based in New Jersey, asserts that general and specific personal jurisdiction existed over defendant subfranchisees based upon the defendants' contacts with BRACS at its New Jersey headquarters. Based on the dates on which the defendants became party to contracts linking them to BRACS, Judge Shwartz found that the defendants, subfranchisees of BRACS operating in Montana and Texas, had initiated their business relationships with BRACS—through their respective subfranchisors (Los Compadres and BRAC-SW)—over twenty years before BRACS moved to New Jersey in 2002. (R&R Trans. 5:2-24.)

Judge Shwartz found that personal jurisdiction over the Texas and Montana subfranchisees was lacking for several reasons. She determined that the movant defendants were incorporated in Texas and Montana and maintained their principal places of business in their respective states of incorporation. (R&R Trans. 17:15-18.) Further, she found that none of the movants conducted any business in New Jersey, maintained offices in New Jersey, or had any employees in New Jersey (R&R Trans. 17:21-25), and that neither the defendants nor their employees ever entered New Jersey for purposes of conducting business. (R&R Trans. 18:3-5.) As such, she determined that defendants' dealings with New Jersey-based yellow pages directory

4

advertiser Wahlstrom did not amount to a New Jersey contact for purposes of general personal jurisdiction, as those advertisements were directed into defendants' respective local markets. (R&R Trans. 18:7-10.)   No evidence was submitted to indicate that movants advertised or solicited New Jersey customers.   (R&R Trans. 18:14-16.)   Judge Shwartz concluded that defendants did not have the requisite "continuous and systematic" contacts supporting general personal jurisdiction.   Judge Shwartz also found that no contacts with New Jersey arose from doing business with New Jersey residents visiting their respective states on business or pleasure; especially because movants made no effort to solicit this business within New Jersey.   (R&R Trans. 18:20-23.)

Judge Shwartz rejected BRACS' arguments that defendants were properly haled into court in New Jersey because they benefited from BRACS' management of franchise operations from BRACS' New Jersey headquarters.   (R&R Trans. 19:1-15.)   She determined that defendants' participation in franchise sales programs, and defendants' faxing their participation forms to BRACS' headquarters in New Jersey did not amount to "continuous and systematic" contacts for purposes of establishing general personal jurisdiction.   (R&R Trans. 19:1-15.)   Her underlying reasons were that the forms were only sent to New Jersey because of BRACS' relocation to New Jersey and the forms instructed defendants to fax them back to BRACS' headquarters.   (R&R Trans. 19:17-25.)   She concluded that the effects of BRACS' unilateral move to New Jersey midstream in its relationship with defendants do not equate to "continuous and systematic" contacts.   *See*, *e.g.*, *Nevins v. McKinley Capital Mgmt., Inc.*, 1999 U.S. App. LEXIS 25531, *4 (10th Cir. 1999) ("In this case, defendants had no contacts with New Mexico that led to the subject matter of this suit other than [plaintiff's] decision to relocate there. Defendants cannot be subjected to personal jurisdiction in New Mexico merely because of

[plaintiff's] unilateral act.")   Furthermore, following termination of the master license agreements in 2004 and 2006, according to its pleadings, BRACS reached *out* of New Jersey to directly continue a business relationship; not the other way around.

With respect to specific personal jurisdiction, Judge Shwartz applied the governing Third Circuit standard as set forth in *Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007), and concluded that defendants did not purposely avail themselves of the privilege of conducting business in New Jersey and thus did not invoke the benefits and protections of New Jersey's laws. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  This ruling was based on the facts that: (1) defendants are corporations based in Texas and Montana with their principal places of business in their respective states of incorporation; (2) defendants do not maintain offices or employees in New Jersey; (3) defendants and their employees do not enter New Jersey for business purposes; (4) the contract from which the dispute arose was not entered into, negotiated, or signed in New Jersey; (5) defendants sent their franchise payments to BRACS in Virginia, not New Jersey; and (6) the plaintiff concedes that the participation forms defendant sent to the plaintiff in New Jersey were sent to the defendants with instructions for them to be returned via fax to New Jersey.  (R&R Trans. 25:9-26:12.)

In addition, Judge Shwartz reasoned that defendants—all of whom maintained lengthy pre-existing relationships with BRACS—could not have expected at the outset of those dealings to be haled into a court in New Jersey.  She further determined that BRACS' claim for declaratory relief concerning BRACS' rights to unilaterally terminate the two master license agreements is not sufficiently related to New Jersey because the contracts were not negotiated or executed while BRACS was based in New Jersey.  (R&R Trans. 28:3-8.)

Judge Shwartz also addressed the motion for dismissal on basis of improper venue, finding that grounds for venue in New Jersey on diversity-of-citizenship jurisdictional basis is lacking under 28 U.S.C. § 1391(a).[1]  (R&R Trans. 29:19-24.)  With regard to § 1391(a), she noted that because no defendants reside in New Jersey, venue is not proper under § 1391(a)(1). Section 1391(a)(2) is a further impediment to venue in New Jersey, because it is clear that "a substantial part of the events or omissions giving rise to the claim" did not occur within New Jersey.  *See* § 1391(a)(2).  Judge Shwartz concluded that the fact that the decision to terminate the master licenses was made in New Jersey does not mean that a "substantial part" of the events giving rise to the action occurred in New Jersey, and that BRACS' reliance on *Ramada Franchise Systems v. Timeless Towns of the Americas*, 1997 U.S. Dist. LEXIS 13861 (D.N.J. Jan. 13, 1997) was misplaced because that case dealt with a situation where personal jurisdiction and venue was assumed to be proper.  *Id.* at **4-5 (clarifying that venue and jurisdiction were proper and that the transfer only concerned convenience).

The Report and Recommendation also addressed BRACS' request, in the alternative, for a transfer of venue under 28 U.S.C. § 1406(a)[2] to any other jurisdiction where it could have been properly brought.  (R&R Trans. 33:11-21.)  Section 1406, which empowers the district court to transfer the case at its discretion, is the correct provision because the original venue is improper in the District of New Jersey.  (R&R Trans. 35:16-17.)  Under § 1406, a court can determine

---

[1] Title 28 U.S.C. § 1391(a) provides:
> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in
> > (1) a judicial district where any defendant resides, if all defendants reside in the same State,
> > (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
> > (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

[2] 28 U.S.C. § 1406(a) provides "(a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

whether a district exists in which the action originally could have been brought that serves the interests of justice. For purposes of this analysis, an action may have been brought in another district if: (1) venue would be proper in that transferee district; (2) and the transferee district could exercise jurisdiction over all of the defendants. *Jolly v. Faucett*, 2007 WL 137833, *1 (E.D. Pa. Jan. 16, 2007) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir.1970)). Judge Shwartz found that venue was not appropriate in Idaho, which was the forum sought in defendants' motion to transfer, because no defendant resides in Idaho, none of the events giving rise to the claims occurred in Idaho, and because the claims arose in Montana and Texas. (R&R Trans. 36:7-24.) She found that there is nothing in the record suggesting that personal jurisdiction could be established over each of the defendants by a federal court sitting in Idaho. In addition, as Judge Shwartz ruled, the defendants cannot consent to jurisdiction for purposes of transfer. *See Kontoulas v. A.H. Robins Co.*, 745 F.2d 312, 314 (4th Cir. 1984). With regard to a potential transfer *sua sponte* to either the District of Montana or one of the districts of Texas, Judge Shwartz noted that this would be imprudent because although certain defendants can be properly sued in Montana or Texas, all of them collectively are not subject to personal jurisdiction in one of those states.

## III.   **BRACS Objections to the R&R**

BRACS objects to the Report and Recommendation principally on the grounds that "[t]he Report is based almost entirely upon BRACS not being headquartered in New Jersey at the time the Defendants entered into their Sublicense Agreements with BRACS Licensees," arguing that "that point is inapposite." (Pls.' Obj. Br. 1.) What BRACS claims is an "inapposite" detail is actually a controlling factor in a jurisdictional analysis. It is settled that "[m]ere unilateral activity of one who claims some relationship with a non-resident defendant will not subject the

non-resident to the jurisdiction of a distant forum." *Int'l Steel Co. v. Charter Builders, Inc.*, 585 F. Supp. 816, 820 (D. Ind. 1984) (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  Notions of fair play and substantial justice dictate that defendants, who never sought to transact with a New Jersey-based BRACS entity or reach into New Jersey at all, had no expectation of being haled into court in New Jersey.  At the time defendants entered into business relationships with Los Compadres and BRAC-SW, they had no reason to anticipate that their relationships with those companies would eventually lead them to defending a lawsuit in a New Jersey courtroom. Only through the compounded fortuity of BRACS' relocation (a party with which defendants were not in privity) and BRACS' subsequent termination of the master license agreements did defendants find themselves resisting personal jurisdiction in a New Jersey court.  Judge Shwartz correctly emphasized the fact of BRACS' move to New Jersey in 2002 in granting defendants' motion.

BRACS contends that Judge Shwartz did not consider the "only issue" in the litigation, which it frames as "[w]hether the defendants can force BRACS to become a party to their Sub-license agreements."  (Pls.' Obj. Br. 2.)  BRACS argues that "[b]y attempting to compel a New Jersey resident to become a party to their agreements, . . . the Defendants have purposely availed themselves of this jurisdiction and subjected themselves to the jurisdiction of this Court."  (*Id.* at 2.)  BRACS argues that because the defendants "now insist on having a direct contractual relationship with BRACS[,] . . . the Defendants reached into New Jersey to attempt to force BRACS to become party to their Sub-license Agreements when BRACS had never been a party to those agreements."  (*Id.* at 2 (emphases in original).)

It is undisputed that BRACS relocated to New Jersey voluntarily and not by compulsion of the defendants.  The amended complaint alleges that BRACS sought to continue the business

relationship after the termination of the master license agreements.  (Am. Compl. ¶¶ 34, 37.)
Importantly, BRACS also took affirmative steps to terminate the master license agreements with
Los Compadres and BRAC-SW, leaving the subfranchisee defendants with no options but to deal
with BRACS directly, now based in New Jersey.  By terminating those agreements, BRACS
forced defendant subfranchisees, whose ability to operate depended on BRACS' cooperation, to
either deal with BRACS or very likely cease operations.   These circumstances were
unforeseeable at the outset of subfranchisees' respective indirect relationships with Illinois-based
franchisor BRACS, which (before termination) only dealt with subfranchisees via subfranchisors
Los Compadres and BRAC-SW.  Accordingly, BRACS' argument that jurisdiction and venue
must turn on defendants' supposed "insistence" on having a direct contractual relationship with
BRACS fails in light of facts demonstrating that BRACS singlehandedly created the need for
defendants to have any dealings whatsoever in New Jersey.

BRACS also submits that defendants had substantial, continuous, and systematic contacts
with the State of New Jersey, and argues that "[s]pecifically, the Report fails to even refer to the
most important systematic contact that each of the Defendants had with New Jersey: each
Defendant has rented cars to New Jersey residents and the employees of New Jersey-based
corporations."  (*Id.* at 2-3.)  As a matter of elementary hornbook law, the mere fact that
defendants have rented cars to New Jersey residents or employees of New Jersey corporations
while visiting Texas or Montana does not confer jurisdiction.  As was illustrated in *Feldman v.
Bally's Park Place, Inc.*, 2006 WL 1582331 (E.D.Pa. June 5, 2006), more significant contacts
have routinely been found insufficiently "systematic and continuous" to establish general
personal jurisdiction.

In *Bally's Park Place*, plaintiff attempted to sue Bally's for injuries sustained in its Atlantic City Claridge Hotel even though Bally's was "not licensed to do business in Pennsylvania; d[id] not maintain offices in Pennsylvania; d[id] not own, manage, or lease any properties in Pennsylvania; and d[id] not have registered agents in Pennsylvania." *Bally's Park Place*, 2006 WL 1582331, *2.  The *Bally's Park Place* court found that Bally's contacts with Pennsylvania were not "both continuous and substantial" to support general personal jurisdiction despite the fact that:  Bally's advertised at least once monthly in several Pennsylvania publications; advertised during the summer on Pennsylvania radio stations; solicited Pennsylvania residents with direct mail incentives to visit Bally's casinos; invited Pennsylvania bus companies to transport residents to its casinos; and attracted nearly a third of its daily bus visitors from Pennsylvania.  *Id.* at *3-4.  Based on *Bally's Park Place* and significant similar precedent, this Court is satisfied that BRACS' allegations that defendants rented cars to New Jersey residents can be easily rejected as supporting general personal jurisdiction.  *See id.* at *3 (citing *Blackwell v. Marina Assocs., d/b/a Harrah's Casino Hotel Atlantic City*, No. 05-5418, 2006 WL 573793, at *1, 4 (E.D. Pa. Mar. 9, 2006) (finding that plaintiff's evidence that he and his wife regularly received promotional materials from defendant's New Jersey casino in the mail and visited the casino after receiving a voucher offering a complimentary overnight stay was not sufficient to demonstrate that defendant engaged in continuous and systematic contacts with Pennsylvania); *Wims v. Beach Terrace Motor Inn, Inc.*, 759 F. Supp. 264, 270 (E.D. Pa.1991), 759 F. Supp. at 270 (concluding that yearly mailing of brochures to 1,133 Pennsylvania residents "can hardly be said to constitute 'extensive and pervasive' contact" in support of general jurisdiction); *Johnson v. Summa Corp.*, 632 F. Supp. 122, 126 (E.D. Pa. 1985) (refusing to exercise personal jurisdiction over Nevada hotel that maintained a toll-free number in

Pennsylvania, mailed a brochure directly to the Pennsylvania plaintiff, and distributed promotional materials to a Philadelphia travel agency)).

BRACS further objects that "[t]he Report also unfairly minimized the contacts the Defendants had with BRACS' Parsippany headquarters," including defendants' allegedly "continuous operational and strategic support, and constant interaction" with BRACS' main office. (Pls.' Obj. Br. 6.)  Merely because the defendant subfranchisees may have communicated with BRACS in New Jersey does not mean that these defendants *reached into* New Jersey much less ever expected to be haled into Court there.  First, as Judge Shwartz found, the fact that a non-resident had a contractual relationship with a resident of a forum is not sufficient to confer general or specific personal jurisdiction over that non-resident.  *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217 (3d Cir. 1992).  Second, the faxing of forms into a forum jurisdiction, or communication with individuals in a forum jurisdiction regarding business conducted in a separate, non-forum jurisdiction (here Montana and Texas) does not subject the sender to personal jurisdiction in the forum.  *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 455 (3d Cir. 2003) ("[T]elephone communication or mail sent by a defendant [do] not trigger personal jurisdiction if they 'do not show purposeful availment.'"); *see also Int'l Med. Group, Inc. v. Am. Arbitration Ass'n, Inc.*, 312 F.3d 833 (7th Cir. 2002) (quoting *Hotmix & Bituminous Equip., Inc. v. Hardrock Equip. Corp.*, 719 N.E.2d 824, 830 (Ind. Ct. App. 1999) (where nonresident who had never been in Indiana engaged in numerous phone calls, letters and fax transmissions with Indiana regarding property located in another state, contacts insufficient to confer personal jurisdiction)).  Thus, BRACS' objections that defendants' communications into New Jersey supports personal jurisdiction are without merit.

BRACS also points to defendants' dealings with Wahlstrom for purposes of securing phone directory advertising space.  Judge Shwartz correctly discounted any contacts with Wahlstrom, however, because Wahlstrom rendered phone directory advertising service to defendants in their respective states of Montana and Texas, connected to New Jersey only by virtue of Wahlstrom's incidental office location there.  Even if defendants had reached out to Wahlstrom to advertise *in New Jersey*, such contacts might not have risen to a "systematic and continuous" reaching into New Jersey to conduct business.  *See Bally's Park Place*, *supra*.

BRACS objects with respect to specific personal jurisdiction, stating that the Report and Recommendation put "overwhelming, and misplaced, importance" on BRACS' 2002 move to New Jersey.  (Pls.' Obj. Br. 8.)  BRACS' objection rests on the contention that defendants attempted to establish a "direct" relationship with BRACS after BRACS' termination of its master licensing agreements, and that to form such a relationship, the defendants reached into New Jersey to transact business with BRACS at their Parsippany headquarters.  BRACS' arguments fail for two reasons:  (1) first, BRACS itself alleged in its complaint that it undertook steps to preserve business relationships with the defendant franchisors following the termination of the agreement; (2) second, BRACS not only moved to New Jersey in 2002, but it effectively *compelled* the subfranchisee defendants to deal with BRACS directly by terminating the subfranchisors' (Los Compadres and BRAC-SW) involvement.  It appears that BRACS acted to maintain its revenue stream from defendants following termination of the master license agreement by transacting directly with those entities, and that BRACS not only unilaterally moved to New Jersey, but apparently put defendant subfranchisees into a situation (*i.e.* by terminating the master license agreements) where they would need to deal directly with BRACS.  Accordingly, BRACS objections regarding specific personal jurisdiction are without merit.

As to the motion to dismiss for lack of venue, BRACS argues that Judge Shwartz mistakenly focused on the fact that "BRACS was not located in New Jersey at the time the Sub-license Agreements were entered." (*Id.* at 3.)  For the same reasons as discussed *supra*, BRACS' unilateral relocation to New Jersey forced the subfranchisee defendants to have contacts in New Jersey.   Moreover, BRACS' termination of the master license agreements thrust the subfranchisee defendants into positions whereby they were compelled to deal with New Jersey-based BRACS or face an inability to operate as a Budget affiliated franchisee.

**IV.**   **Conclusion**

In sum, the Court agrees with the Report and Recommendation and adopts it as the opinion of the Court.  An appropriate order will be entered.


/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.